The next case, number 23-8019, In Re, James Hayes. At this time, would counsel for the respondent please introduce himself on the record to begin. Edward Weiss for the respondent. You may begin. May it please the Court, this is a reciprocal, it's a discipline proceeding based upon action by the Supreme Judicial Court in February as against James Hayes. I remind the Court that it is a plenary review for purposes of discipline in this Court. The disciplinary rules specifically provide, essentially, this Court will, with the respondent having the burden of persuasion, look to see, in particular, whether substantially similar discipline should be applied, supplied, or will be gross injustice, or whether there is an infirmity of proof, again, in our position being supporting the extreme remedy disbarment imposed upon Mr. Hayes. I think we have two principal arguments to make. One would be under disciplinary rule C-3, going substantially similar in this Court. It was characterized in the SJC that this is a case where Mr. Hayes found himself representing in a child support dispute, frankly, a client whose principal goal was to avoid paying child support under any circumstances. When it came to the borrower-seers two years later for the first time, the request for investigation, that was Exhibit 56, I believe, in the SJC, basically was a list of fees he questioned, was raising questions concerning documentation, raising questions concerning communication. The word fraud was never found in there. In fact, if you look at both requests for investigation, 56 and 57 in the Court below, it was always conceded what became the major sticking point in the fraud claim, was there a transfer or was there ever a transfer between the client and his brother or a lottery proceed could be applied to child support? Basically, just took it as a given without attributing that fraud, that potentially fraud or a fraud of conveyance to Mr. Hayes. This is a fee dispute. This is a client breakdown dispute. It turned into a disbarment. We would contend that given 40 years of service at the bar, substantial public service, that's in the affidavit submitted. Have you exhausted all of your avenues before the SJC? There's no reconsideration pending at this point? The disbarment was effective February 2023. I think the docket says it was called to this Court's attention in May of last year, and it's being argued now. Again, under the procedure and disciplinary rules, the Court learns of it, eventually a hearing takes place. No, but I think Judge Thompson's question is, are there any further pending proceedings before the SJC? No, the SJC proceeding closed effectively January 24th. And there's nothing else available? What? There's nothing else available at the SJC? Nothing else available under ordinary procedure. In theory, one could always apply for modification, but certainly nothing under the ordinary procedure. Or he could apply for reinstatement again. That is one of the issues. Disbarment means eight years. A term of suspension, and again, we are not going to argue at this point the engagement agreement, which the SJC found to be highly questionable, the failure to follow procedures required by IOLTA, which were specifically endorsed by the engagement agreement. We're not going to suggest at this point that they could not have formed a basis for disbarment. What we're suggesting, though, is if you look at other similar cases where the only issues appear to be fees and client breakdown, and I'm citing specifically Diviace in 475 Mass 1013, in 2015, 27 months for a client breakdown, and frankly, client abandonment. And unfortunately, I'm afraid Mr. Diviace's name is well known for having not succeeded in getting himself reinstated for the last nine years. And the Zankowski case, which was... In the decision, it says, Similarly, this case is no ordinary excessive fees case. Hayes did not merely pad his bills, but preyed on a vulnerable, unsophisticated individual. He had the March signed, a shocking predatory fee agreement and power of attorney giving himself sole discretion to pay himself any amount he chose from his lottery winnings, blah, blah, blah, blah. I'm not here to defend the agreement at this point. No, no, no, but I guess I'm saying for purposes of the comparison point where you say it's just client breakdown, this is language specifically addressing that point by saying this is not an ordinary case. It was not an ordinary case in many ways. The context in which Mr. Hayes was litigating the case in probate court from roughly October 2013 to roughly January 2014 was for a client who, yes, who has serious impairments. And one of the impairments Mr. Hayes was concerned about, as he testified, was his client who had burned through the child support money perhaps before, perhaps after an injunctious issue freezing further expenditures of that money. Having transferred half it to his brother, what we would contend would have been a previously agreed partnership. What he testified to later, the advice of Mr. Hayes, which we believe was inconsistent with every other piece of testimony in the case, was that his immediate concern was that there not be a probate court contempt, which would lead to a client with, as recognized in both the single justice and the panel opinion, serious manic depression problems. You know, if you have a suicide risk, a 1% risk of imprisonment with a 5% risk of suicide was too much. Many of his actions were taken, perhaps ill-advisedly, to prevent that at all costs. Again, our concern is that because of one line of testimony of Mr. LaMarche's saying that Mr. Hayes was the creator of the transfer of half the funds to his half-brother, that somehow the entire case was changed for fraud. Now, our contention, and again this perhaps goes to Disciplinary Rule C-2, is that, in fact, not withstand the rule that ordinarily a hearing committee and the SJC can determine the credibility of witnesses. Taken as a whole, the testimony was incredible. Taken as a whole, it tinged the approach to the rest of the case. It turned a fee case and an IELTS and noncompliance case into a fraud case inappropriately. Just so I understand, if we didn't agree with that, if we did not agree with you on that point, and I understand you're making the argument that we should, do you then think if we read the record as the SJC read it, that they're wrong to say this is like Zak and Croson? Again, I would say, with the burden of persuasion being upon Mr. Hayes, that this, you know, Disciplinary Rule 2 and Williams suggests that this Court at least has the power to look at the record. Yeah, no, I'm asking, I understand the point that if we characterize the record and viewed the record differently, that might affect things. I'm just asking, if we accepted the characterization the SJC gave, are you disputing that the case is then equivalent to Zak and Croson, as the SJC said? Again, I would ask that, you know, this, again, I think Williams suggests this Court is, you know, this Court, the opinion of the SJC in this Court per Williams has persuasive authority. It is entitled to respect. It is not controlling. That it is this Court's responsibility to look at it separately, look at it independently. And, you know, we are looking here at, again, if, you know, this is a witness who testified not only that his client, that Mr. Hayes was the originator of the alleged fraud or public fraud. So you would be asking us to make a different credibility finding or different determination? I think that if you, I would submit that if you look at, again, Rule C-4 says, you know, you can make a different decision as far as appropriate discipline. Rule C-2 talks about an infirmity of proof. Again, I'm not going to argue that the rules of the SJC says the hearing committee controls on credibility. I'm not going to argue that that means that you get, you know, that you have a right to accept the SJC's finding of credibility, even though I believe, as we argue under the Hayes case, what, you know, credibility inconsistent with every other piece of evidence is not credibility. That the, that again, all we are suggesting, and this is a matter, perhaps, even if it's only reputation, you know, reputational harm. SJC essentially, as it always does in discipline cases, balancing protection of the public, protection of the system, against the possibility of rehabilitation of the lawyer. In this case, you know, when completely, you know, essentially said the law, this lawyer was beyond redemption on the basis of findings of law, which were actually, we contend, contrary to the actual language of the disciplinary rules, contrary to discipline applied in cases of the same factual result, in terms of the relation between the client, the relation between the client and the attorney, and at the very least, you know, the word disbarment ought not to be used in this court, and this court has the power not to oppose the word disbarment. So what are you looking for? I would love exoneration. We're not going to get that. If I would, again, our suggestion would have been, as we would argue before the SJC, that at least as a record, it be deemed, you know, a term suspension, or, you know, nominally, again, looking at the other cases we refer to, perhaps in the two-year range. I don't know, and I'm not purporting to ask what after a suspension with pending disbarment my client's privilege in this court would be. He does have immigration practice. He does have practices outside the district court, and certainly it's on the Massachusetts State Courts. He doesn't, for immigration practice, he doesn't have to be a lawyer. I understand that, but I believe the other, you know, I'm just not going to express an opinion as to what the immigration rules have to say about appearing as a counsel in immigration cases once you, you know, if you're... Let me also ask you, so what you're suggesting is, if we impose some sort of reciprocal discipline, that we'd be more lenient perhaps than the SJC? Yes. That at this point, you know, ideally it would be an exoneration. At this point, I'm not going to ask, I'm not going to ask you to ignore the findings vis-a-vis the documents from the record, which, again, they are what they are. I'd like also just to have an idea. Your client's, he's been admitted to this court, I think, for almost 40 years. Does he actively practice here, regularly practice, or is he just admitted? Since I will acknowledge that during the pendency of proceedings, before a complaint was filed, I believe, I did sign his application. It was in connection with representation in one immigration appeal, which might have come before this court, which, but again, that would have been the limit of his practice before this court. Okay. Thank you. Thank you. What about the district court? What? What about the federal district court? The record will show that he did not object to the show cause filed in the district court. With respect to this. So he's been disbarred by the Massachusetts district court? Yes. That's a record. I thank the court. Thank you. Thank you, counsel. That concludes argument in this case.